FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 31, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL DEGON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL WILLIAMS,<br><br>　　　　Defendant. | No. 2:22-CV-00142-SAB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

On October 3, 2024, the Court held a videoconference hearing in this matter to address Plaintiff's pending Motion for Partial Summary Judgment. ECF No. 63. Plaintiff was represented by Riley Leonard, Jason Piskel, and Robert Gingras. Defendant was represented by Andrea Meyer.

At the hearing, the Court heard arguments on the Motion and took it under advisement. After further reviewing the briefing, caselaw, and record, the Court **denies** Plaintiff's Motion.

## MOTION STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT *1**

genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## BACKGROUND

This case was filed in the U.S. District Court for the Eastern District of Washington on June 14, 2022, and pursuant to 28 U.S.C. § 1332. In July 2020, Plaintiff claims he lost all ownership interest in two railroad projects located in Spangle, Washington, in which he and Defendant were business partners. He asserts eight causes of action in his Second Amended Complaint for: (1) breach of contract as to the Spangle Agreement; (2) negligent misrepresentation; (3) fraud; (4) breach of fiduciary duty as to the Spangle Agreement; (5) breach of contract as to the WDB Agreement; (6) breach of fiduciary duty as to the WDB Agreement; (7) quantum meruit; and (8) unjust enrichment. Below are the material facts of this case not in dispute.

On July 7, 2016, Defendant drafted and both parties signed a handwritten,

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT *2**

one-page contract describing the development and ownership interests in two railroad projects. The agreement was titled Spangle Agreement and read:

### Contract Agreement

This agreement made between (Mike Williams) of P.O. Box 331 Richmond Mo. 64085 and (Dan Degon) of 4150 East Fountain St, Mesa Arizona 85205 on July 7, 2016. Both parties agree to the following terms and agreement on two projects located in Spokane County near Spangle Washington.

**Project 1**. Spangle Transload/trash and various commodities
Dan Degon shall have 25% interest in project. Ownership shall be transferred upon payoff of facility. No money will be distributed before payoff unless mutually agreed by both parties.

**Project 2**. Locomotive Shop and Storage Track
Mike Williams and Dan Degon shall be 50/50 owners of the facility. Property is located on State ROW and partially on 70 acre tract. Any additional partner or partners may become owners if mutually agreed by Dan Degon and Mike Williams.

Plaintiff and Defendant agreed that Project 1 was set for a parcel south of Cameron Road. Project 2 was the 70-acre lot north of Cameron Road.

After signing the contract, Plaintiff applied for permitting, coordinated with Spokane County and Simpson Engineers for project management, and organized a bidding process for construction. On April 4, 2017, Plaintiff created Rocky Point Rail Terminal, LLC.

In July of 2017, the Washington State Department of Transportation ("WSDOT") sent offer letters to the Williams Group and Whitman Terminaling, both owned by Defendant, to purchase the rights of way north and south of Cameron Road in Spangle. The rights of way were acquired by each group on August 25, 2017.

From October to November 2017, construction on a storage track south of

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT *3**

Cameron Road commenced.

On or around December 20, 2017, Plaintiff, Defendant, and Defendant's daughter Avory Beggs created a limited liability company, WDB Terminaling, LLC ("WDB"), converted from Rocky Point Terminal, LLC. Ownership interests divided into 36% for Plaintiff, 56% for Defendant, and 8% for Beggs. Defendant was listed as the initial manager, and each partner gave $0 for the initial capital contribution. All parties signed the agreement. The intent of the business was for railcar services.

Beggs brought in roughly $1,150,000 from North American Rail Partners to fund WDB in exchange for an ownership interest in WDB.

On January 2, 2018, Defendant sold 20% of his shares of common stock in WDB to NAR Fund I, LLC. Plaintiff did not know of or consent to the sale. This dropped Defendant's interest in WDB to 36%.

By October 1, 2018, construction had completed for storage tracks south of Cameron Road to store railcars. On that day, Plaintiff and Defendant discussed Plaintiff's ownership rights related to the storage track south of Cameron Road. Defendant told Plaintiff he did not have ownership rights in the track.

In the spring of 2019, Plaintiff submitted an invoice for $23,724.25 for fuel for work done on the WDB site, and in February and April of 2019, WDB paid out $5,317 for engineering services and $128,541.35 for drilling and blasting.

On February 21, 2020, Beggs contacted Plaintiff to seek a status report on obtaining an Industry Track Agreement ("ITA") from the state for the switch in the main rail line north of Cameron Road. The ITA would constitute an agreement among the entity developing the property north of Cameron Road, WSDOT, and SS&P, the rail operator. Plaintiff emailed his contact on March 9, 2020, for an update on the WDB project ITA and received a reply that it was in the state's hands on March 11, 2020. He stated he was lead on the project.

On March 13, 2020, Beggs removed Plaintiff from communication on the

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT *4**

ITA and project north of Cameron Road. In July 2020, Defendant informed Plaintiff that the project was not built under WDB. It was built under Whitman Terminaling.

On April 3, 2020, the engineering company contacted Plaintiff and Matt Ruple, an employee with Whitman Terminaling, to clarify the point of contact for the project north of Cameron Road because Plaintiff had previously been the contact since 2017. Ruple responded that he was the lead on the ROW north of Cameron Road.

In July of 2020, Plaintiff and Defendant met in Spangle at the lot north of Cameron Road. Defendant told Plaintiff the project was built under Whitman Terminaling and not WDB, so Plaintiff was not an owner. Whitman stores loaded and empty railcars in Spangle.

Plaintiff claims losses of at least $612,750 in distributions for storage revenue at both locations; and ownership value in both projects between $4,530,000 and $5,518,000. He seeks compensatory damages in excess of $75,000; a judicial determination the Spangle Agreement was the operative partnership agreement under which Projects 1 and 2 were intended to be developed, or a determination the WDB Agreement was the operative partnership under which Project 2 was intended to be developed; attorney's fees and costs; and pre- and post-judgment interest.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This case centers on a dispute over whether the parties developed land in rural Spangle, Washington, for railroad operations. Plaintiff claims a project he helped develop and maintains ownership rights to sits on that land. Defendant claims a facility is out there, but Plaintiff has no rights to it.

Defendant seems to be gaslighting Plaintiff by playing a business shell game to deprive Plaintiff of ownership rights to the projects. But this Court deals in facts, and the facts of this case are disputed.

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT *5**

In his present Motion, Plaintiff seeks judgment on his causes of action for (1) breach of contract as to the Spangle agreement, (4) breach of fiduciary duty as to the Spangle Agreement, (5) breach of contract as to the WDB Agreement, (6) breach of fiduciary duty as to the WDB Agreement, and (8) unjust enrichment.

The Court considers each in turn.

### I. Claim 1 for Breach of Contract — Spangle Agreement

**a.  Legal Standard**

Under Washington State law, a breach of contract occurs when (1) the parties entered into an enforceable contract; (2) the contract was breached by one or both parties; and (3) the party seeking recovery was damaged as a result of the breaching party's actions. *See Nw. Indep. Forest Mfrs v. Dep't of Labor & Indus.*, 78 Wash. App. 707, 712 (1995).

To be found enforceable, a contract must contain an offer and acceptance, as well as a promised exchange or consideration. *See Lehrer v. State, Dep't of Soc. & Health Servs.*, 101 Wash. App. 509, 512–13 (2000). It also must contain essential terms, to which the parties mutually assent. *See McEachern v. Sherwood & Roberts, Inc.*, 36 Wash. App. 576, 579 (1984). If the parties do not mutually assent, the contract is unenforceable. *See Swanson v. Holmquist*, 13 Wash. App. 939, 942 (1975). "Even where an agreement might be too indefinite on its terms to be specifically enforced, it may be certain enough to constitute a valid contract, the breach of which may give rise to damages." *McEachern*, 36 Wash. App. at 579.

Washington State adheres to the objective manifestation theory of contracts, meaning a court attempts to understand the parties' intent by looking to the agreement, rather than the subjective intents. *See Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash. 2d 493, 503 (2005) (en banc). Any language subject to interpretation is construed against the drafting party. *See Guy Stickney, Inc. v. Underwood*, 67 Wash. 2d 824, 827 (1966).

//

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT *6**

### b. Analysis

The Spangle Agreement is incomplete. Though it contains the parties' identities and certain details of the proposed projects, both Plaintiff and Defendant rely on parole evidence to add to the agreement on material issues of duty, location of the projects, and the ownership payout.

There are genuine material issues of fact regarding the nature and terms of the agreement and whether those terms were breached. The Court cannot conclude as a matter of law whether there was a contract and if so, whether it was breached. Thus, the Court **denies** summary judgment for Claim 1 for breach of contract as to the Spangle Agreement.

## II. Claim 4 for Breach of Fiduciary Duty — Spangle Agreement

### a. Legal Standard

Washington State defines a general partnership as "composed of two or more persons (usually not a married couple) who agree to contribute money, labor, and/or skill to a business. Each partner shares the profits, losses, and management of the business and each partner is personally and equally liable for debts of the partnership. Formal terms of the partnership are usually contained within a written partnership agreement."[1]

Washington places a great weight on the distribution of losses in determining the existence of a partnership. *See DeFelice v. State, Emp't Sec. Dep't*, 187 Wash. App. 779, 788–89 (2015) (citing *Gottlieb Bros. v. Culbertson's*, 152 Wash. 205, 209 (1929)). Further, "while a partnership's existence can be established by circumstantial evidence, circumstantial evidence does not tend to prove the existence of a partnership unless it is inconsistent with any other theory."

---

[1] *See* WASH. STATE SEC'Y OF STATE, WHAT ARE WASHINGTON STATE BUSINESS STRUCTURES?, https://www.sos.wa.gov/corporations-charities/frequently-asked-questions-faqs/what-are-washington-state-business-structures (last visited Oct. 21, 2024).

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT *7**

*DeFelice*, 187 Wash. App. at 789 (citing *Eder v. Reddick*, 46 Wash. 2d 41, 49 (1955)).

### b. Analysis

The Court first must determine whether a fiduciary duty existed. In the Spangle Agreement, the only reference to "partners" is the last line: "Any additional partner or partners may become owners if mutually agreed by Dan Degon and Mike Williams." Any other arguments to support or negate the existence of a partnership—creating a fiduciary duty—rely on disputed material facts and cannot be ruled on at this stage.

The Court **denies** Plaintiff summary judgment as to Claim 4 for breach of fiduciary duty as to the Spangle Agreement.

### III. Claim 5 for Breach of Contract – WDB Agreement

### a. Legal Standard

The Court again addresses the breach of contract factors considered under Washington State law as applied to the WDB Agreement. *See. Nw. Indep. Forest Mfrs v. Dep't of Labor & Indus.*, 78 Wash. App. 707, 712 (1995).

### b. Analysis

The parties agree the WDB Agreement is an enforceable contract, which created a Limited Liability Company under Washington State law.

However, there are several material facts in dispute regarding the projects, distribution of ownership, financial responsibilities, and more. There is also a factual dispute as to the sale of part of Defendant's interest in WDB Terminaling to NAR Fund.

The disputes are material issues for a trier of fact to decide. The Court **denies** Plaintiff summary judgment as to Claim 5 for breach of contract on the WDB Agreement.

//

//

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT *8**

### IV.    Claim 6 for Breach of Fiduciary Duty – WDB Agreement

**a.    Legal Standard**

A breach of a fiduciary duty results in a liability in tort. *See Miller v. U.S. Bank of Wash., N.A.*, 72 Wash. App. 416, 426 (1994). It is a question of law whether a duty exists. *See Hansen v. Friend*, 118 Wash. 2d 476, 479 (1992). Under Washington State law and to bring a claim for breach of fiduciary duty, a plaintiff must show "(1) the existence of a fiduciary duty, (2) a breach of that fiduciary duty, (3) resulting injury, and (4) that the breach of duty proximately caused the injury." *Arden v. Forsberg & Umlauf, P.S.*, 193 Wash. App. 731, 743 (2016).

"A fiduciary relationship arises as a matter of law in certain contexts such as [. . .] partner and partner." *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wash. App. 412, 434 (2002). Partners in a member-managed LLC are "accountable to each other and the partnership as fiduciaries." *Bishop of Victoria Crop. Sole v. Corp. Bus. Park, LLC*, 138 Wash. App. 443, 456 (2007). Further, Wash. Rev. Code § 25.05.165 requires partners to adhere to the fiduciary duties of loyalty and care, including to avoid secret profits, self-dealing, and conflicts of interest, as well as refraining from competing with the partnership.

**b.    Analysis**

Plaintiff and Defendant had a fiduciary relationship through their partnership under WDB LLC. Under this relationship, each partner was "accountable to each other and the partnership as fiduciaries." *Bishop of Victoria*, 138 Wash. App. at 456. They owed the duties of care and loyalty. Wash. Rev. Code § 25.05.165.

However, given there are material disputes of fact regarding whether Defendant breached the contract under the WDB Agreement, the Court cannot rule on whether a subsequent breach of fiduciary duty resulted.

The Court **denies** Plaintiff summary judgment as to Claim 6 for breach of fiduciary duty on the WDB Agreement because there are genuine issues of material fact.

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT \*9**

### V.  Claim 8: Unjust Enrichment

Plaintiff conditioned Claim 8 for unjust enrichment on the invalidation of the Spangle Agreement. As discussed, the Court cannot rule on the validation of either agreement at this stage, which makes a ruling on this claim premature.

The Court **denies** Plaintiff summary judgment as to Claim 8 for unjust enrichment.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Partial Summary Judgment, ECF No. 63, is **DENIED.**

2. The parties shall file a joint status report with proposed new trial dates on or before **November 15, 2024**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 31st day of October 2024.



Stanley A. Bastian
Chief United States District Judge

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** *10