FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 13, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL DEGON,<br>Plaintiff,<br>v.<br>MICHAEL WILLIAMS,<br>Defendant. | No. 2:22-CV-00142-SAB<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendant's Motion for Partial Summary Judgment, ECF No. 166. The motion was heard without oral argument.[1] Plaintiff is represented by Isaac Huettl, Jason Piskel, and Robert Gingras. Defendant Michael Williams is represented by Timothy Coleman and Andrea Meyer.

Plaintiff is suing his former business partner, Defendant Michael Williams. Plaintiff claims that in 2020, he lost all ownership interest in two railroad projects located in Spangle, Washington. In his Third Amended Complaint, Plaintiff is bringing claims for: (1) breach of contract as to the Spangle Agreement; (2) negligent misrepresentation; (3) fraud; (4) breach of fiduciary duty as to the Spangle Agreement; (5) breach of contract as to the WDB Agreement; (6) breach of fiduciary duty as to the WDB Agreement; (7) quantum meruit; and (8) unjust enrichment.

Defendant moves for partial summary judgment on Plaintiff's (1) breach of

[1] The Court has determined that oral argument is not necessary. See Local Rule 7(i)(3)(B)(iii).

contract as to the Spangle Agreement; (2) negligent misrepresentations; (3) fraud (4) and breach of fiduciary duty as to the Spangle Agreement.

**Motion Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**Facts**

Defendant Williams operated a number of railroad entities, including the Washington and Idaho Railroad ("WIR"). Plaintiff DeGon owned GFY Management. WIR hired GFY Management and Plaintiff to perform consulting

services for it. In 2014, Plaintiff began working on a project with Defendant Williams, called Rocky Point, to be developed in Spangle, Washington. Around this time, Plaintiff also began managing the WIR.

On July 7, 2016, Defendant Williams drafted and both parties signed a handwritten, one-page contract describing the development and ownership interests in two railroad projects. The agreement was titled Spangle Agreement and read:

**Contract Agreement**[2]

> This agreement made between (Mike Williams) of P.O. Box 331 Richmond Mo. 64085 and (Dan Degon) of 4150 East Fountain St, Mesa Arizona 85205 on July 7, 2016. Both parties agree to the following terms and agreement on two projects located in Spokane County near Spangle Washington.
>
> **Project 1**. Spangle Transload/trash and various commodities
> Dan Degon shall have 25% interest in project. Ownership shall be transferred upon payoff of facility. No money will be distributed before payoff unless mutually agreed by both parties.
>
> **Project 2**. Locomotive Shop and Storage Track
> Mike Williams and Dan Degon shall be 50/50 owners of the facility. Property is located on State ROW and partially on 70 acre tract. Any additional partner or partners may become owners if mutually agreed by Dan Degon and Mike Williams.

Plaintiff applied for permitting, coordinated with Spokane County and Simpson Engineers for project management, and organized a bidding process for construction. On April 4, 2017, Plaintiff created Rocky Point Rail Terminal, LLC. The goal of the project was to purchase a 70-acre parcel of property north of Cameron Road, along with the Baxter Ranches. Plaintiff did not invest any capital in the two projects. He sought grant money from the WSDOT for the locomotive shop but was unsuccessful. Neither of the two projects were developed.

---

[2] Plaintiff and Defendant agreed that Project 1 was set for a parcel south of Cameron Road. Project 2 was the 70-acre lot north of Cameron Road.

In December 2017, Plaintiff, Defendant Williams, and Avory Beggs, Defendant's daughter, signed the WDB Terminaling Company Agreement, which created WDB Terminaling LLC. The ownership percentages were Defendant Williams 56%, Plaintiff 36%, and Beggs 8%. Plaintiff filed a Certificate of Amendment with the Washington Secretary of State to change the name of Rocky Point Rail Terminal, LLC to WDB Terminaling, LLC. Ms. Beggs obtained $1,150,000 in capital from North American Rail Partners (NAR Fund).
Also in 2017, third-party Williams Group and Whitman Terminaling, both owned by Defendant Williams, purchased the rights of way north and south of Cameron Road in Spangle from WSDOT. Plaintiff knew about the purchases. By developing railcar storage on the state's right of way, local zoning ordinances would not apply. From October to November 2017, construction on a storage track south of Cameron Road commenced. On January 2, 2018, Defendant Williams sold 20% of his shares of common stock in WDB to NAR Fund I, LLC. Plaintiff did not know of or consent to the sale. This dropped Defendant William's interest in WDB to 36%.

By October 1, 2018, construction was completed for storage tracks south of Cameron Road to store railcars. On that day, Plaintiff and Defendant Williams met, and Defendant Williams told Plaintiff that he did not have ownership rights in the storage track south of Cameron Road.

On February 21, 2020, Ms. Beggs contacted Plaintiff to seek a status report on obtaining an Industry Track Agreement ("ITA") from Washington state for the switch in the main rail line north of Cameron Road. The ITAs are the last step in getting rail traffic on or off the main line. The ITA would constitute an agreement among the entity developing the property north of Cameron Road, WSDOT, and SS&P, the rail operator that took over from WIR. Plaintiff emailed his contact on March 9, 2020, for an update on the WDB project ITA and received a reply on March 11, 2020 that stated it was in the state's hands. In the email, Plaintiff stated

he was lead on the project.

On March 13, 2020, Ms. Beggs removed Plaintiff from communication on the ITA and project north of Cameron Road and informed the State that she and Matt Ruple would be lead on the project. On April 3, 2020, the engineering company contacted Plaintiff and Matt Ruple, an employee with Whitman Terminaling, to clarify the point of contact for the project north of Cameron Road because Plaintiff had previously been the contact since 2017. Ruple responded that he was the lead on the project north of Cameron Road.

In July 2020, Plaintiff and Defendant William met in Spangle at the lot north of Cameron Road. Defendant William told Plaintiff the project was built under Whitman Terminaling and not WDB, so Plaintiff was not an owner.

**Analysis**

Defendant argues that Plaintiff's claim that Defendant breached a handwritten agreement must be dismissed because (1) the terms are too vague to allow them to be enforceable, (2) the agreement was only a preliminary agreement to negotiate, and (3) the parties entered into a later, fully-integrated agreement regarding the same subject matter that supersedes the handwritten agreement.

Under Washington law, the essential elements of a contract are: (1) the subject matter; (2) the parties; (3) the promise; (4) the terms and conditions; and (5) consideration.

The goal of contract interpretation is to determine the intent of the parties. *Becker v. Wash. St. Univ.*, 165 Wash.App. 235, 246 (2011) "The intent of the parties to a particular agreement may be discovered not only from the actual language of the agreement but also from viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties. *Tanner Elec. Coop. v Puget Sound Power Light Co.*, 128 Wash.2d 656,

675 (1996). "If only one reasonable meaning can be ascribed to the agreement when viewed in context, that meaning necessarily reflects the parties' intent; if two or more meanings are reasonable, a question of fact is presented." *Martinez v. Miller Indus., Inc.,* 94 Wash.App. 935, 943 (1999) (quotation omitted).

To be enforceable, a contract must be "definite enough so that when it is coupled with the acceptance it can be determined, with at least a reasonable degree of certainty, what the nature and extent of the obligation is which the proposer has assumed." *Hansen v. Transworld Wireless TV-Spokane, Inc.*, 111 Wash.App. 361, 376 (2002) (quotation omitted). On the other hand, "even where an agreement might be too indefinite on its terms to be specifically enforced, it may be certain enough to constitute a valid contract, the breach of which may give rise to damages." *Id.*

Courts are cautioned against declaring a contract void for lack of certainty; rather they should "endeavor to discover the true meaning and intent of the parties." *Platts v. Arney*, 46 Wash.2d 122, 127 (1955); *Olson v. Balch*, 53 Wash.2d 938, 942 (1964)("[I]n construing an indefinite agreement, a court should endeavor, if possible, to find a sufficiently definite meaning to the bargain made by the parties to carry out their intent and 'not favor, but lean against, the destruction of contracts because of uncertainty.)

Interpretation of a contract is generally a determination of fact; "it is the process that ascertains the meaning of a term by examining objective manifestations of the parties' intent." *Denny's Rests., Inc. v. Security Union Title Ins. Co.*, 71 Wash.App. 194, 201, 859 P.2d 619 (1993). But "[i]nterpretation of a contract provision is a question of law when (1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be drawn from the extrinsic evidence." *Tanner*, 128 Wash.2d at 674.

The Court does not find that the contract is not too vague to be enforceable. Moreover, genuine issues of material fact exist, and a jury will need to determine

whether the WDB Terminaling agreement supersedes the written agreement, whether the handwritten agreement was only a preliminary agreement to negotiate or whether Defendant engaged in fraud to induce Plaintiff to enter the WDB Terminaling Agreement.

Defendant argues that Plaintiff's claims for both fraud and negligent misrepresentation must be dismissed because they are not based on false statement of existing fact, but rather on future promises that cannot form the basis of a fraud or negligent misrepresentation claim.

There are two ways to establish fraudulent concealment or misrepresentation. First, the plaintiff may affirmatively plead and prove the nine elements of fraud: (1) a representation of an existing fact; (2) the fact is material; (3) the fact is false; (4) the defendant knew the fact was false or was ignorant of its truth; (5) the defendant intended the plaintiff to act on the fact; (6) the plaintiff did not know the fact was false; (7) the plaintiff relied on the truth of the fact; (8) the plaintiff had a right to rely on it; and (9) the plaintiff had damages. *Baddeley v. Seek*, 138 Wash.App. 333, 338 (2007). The plaintiff must show every element of fraud by clear, cogent, and convincing evidence. *Id.* Alternatively, the plaintiff may show that the defendant breached an affirmative duty to disclose a material fact. *Stiley v. Block*, 130 Wash.2d 486, 515-16 (1996) (Talmadge, J., concurring).

To establish negligent misrepresentation, a plaintiff must show by clear, cogent, and convincing evidence that the defendant negligently supplied false information the defendant knew, or should have known, would guide the plaintiff in making a business decision, and that the plaintiff justifiably relied on the false information. *Lawyers Title Ins. Corp. v. Baik,* 147 Wash.2d 536, 545 (2002). The plaintiff must show that the false information was the proximate cause of the claimed damages.

A fraudulent misrepresentation claim and a negligent misrepresentation claim both require the misrepresentation to be one of existing fact; a promise of

future performance is therefore not an actionable statement. *See Adams v. King Cnty.*, 164 Wash.2d 640, 662 (2008) (future promise or agreement for the scope of a surgery was not a statement of existing fact for a fraud claim); *see also Havens v. C&D Plastics, Inc.*, 124 Wash.2d 158, 182 (1994) (statement of existing fact is a prerequisite to a negligent misrepresentation claim).

While promises of future conduct may support a contract claim, failure to perform those promises alone cannot establish the requisite negligence for negligent misrepresentation. *Micro Enhancement Int'l v. Coopers & Lybrand, LLP*, 110 Wash.App. 412, 436 (2002). A false representation as to a presently existing fact is a prerequisite to a misrepresentation claim. *Id.* On the other hand, "if a promise is made for the purpose of deceiving and with no intention of performing," it may be actionable. *Sprague v. Sumitomo Forestry Co.*, 104 Wash.2d 751, 762 (1985). In *Flower v. T.R.A. Indus., Inc*, the Court of Appeals held the employee presented a genuine issue of fact as to whether the employer had any intention of keeping his promise when it was made. 126 Wash.App. 13 (2005).

Similar to *Flower*, there are genuine issues of material fact as to whether Defendant Williams had any intention of keeping the promises that he made. As such, the jury will need to decide whether Defendant engaged in fraud or made negligent misrepresentations.

Defendant argues the Independent Duty Doctrine bars Plaintiff's fraud claim because it is duplicative of his contract claims. Defendant argues that absent the WDB Agreement Williams had no duty to divulge to Plaintiff that Project 2 was not being developed under WDB Terminaling. He asserts there was no independent duty—outside the parties' membership agreement for such disclosure.

Under the independent duty doctrine, an injury "is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract." *Eastwood v. Horse Harbor Found., Inc.*, 170 Wash.2d 380, 389 (2010). "When no independent tort duty exists, tort does not provide a remedy." *Id.* "One

circumstance where the duty to avoid negligent misrepresentation might arise independently of the contract is where one party, through misrepresentations, induces another to enter into a contractual relationship." *Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*, 179 Wash.2d 84, 96 (2013). But the plaintiff must show that the representation was made for the purpose of deceiving and with no intention of performing. *Flowers*, 127 Wash.App. at 32.

Genuine issues of material fact exist for the jury to resolve regarding whether Defendant acted with the purpose of deceiving Plaintiff.

Defendant argues that Plaintiff did not suffer any damages as the result of Williams' statements. Here, a reasonable jury could find that Plaintiff was damaged if they found that Defendant made false statements to induce him to act.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment, ECF No. 166, is **DENIED**.

2. Plaintiff's Amended Motion for Clarification and Reconsideration, ECF No. 174, and Motion for Clarification and Reconsideration, ECF No. 172, are **DENIED**, as moot.

3. Defendants' Motion to Amend Scheduling Order by Striking Trial and Pretrial Deadlines, ECF No. 190, and related Motion to Expedite, are **DENIED**, as moot.

4. Defendant's Motion for Remote Testimony by Certain Witnesses at Trial, ECF No. 194, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 13th day of November 2026.

Stan Bastian
Chief United States District Judge